UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MICHAEL POSEY,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 2:25-CV-112 JD

## OPINION AND ORDER

Plaintiff Michael Posey appeals the denial of his claims for disability insurance benefits under Title II and Title XVI of the Social Security Act. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, and Plaintiff now seeks judicial review in this Court. For the reasons below, the Court will affirm the Commissioner's decision.

### A. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be

"more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B.  Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine

whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. Discussion**

**(1)** *The ALJ's Decision*

On January 11, 2024, the ALJ issued a decision finding that Plaintiff was not disabled. (ALJ's Decision, R. at 28.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Plaintiff suffered from the following severe impairments: "obesity, agoraphobia, degenerative disc disease of the lumbar spine, osteoarthritis, psoriatic arthritis, atrial fibrillation, and coronary artery disease." (*Id*., R. at 21.) Concerning mental functioning, the ALJ found that Plaintiff has mild limitations[1] in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. As for concentrating, persisting, or maintaining pace, the ALJ determined that Plaintiff is mildly limited in this area. (*Id*., R. at 21–22.)

The ALJ recounted Plaintiff's representations in the function report as well as his testimony at the hearing. He noted that Plaintiff initially applied for the disability benefits due to degenerative disc disease, coronary artery disease, arthritis in his joints, obesity, and bipolar disorder. According to Plaintiff, he suffered from numbness in his hands and feet and had difficulty walking, bending, or sitting. Plaintiff stated that he stayed inside at home during the day because he feared crowded places even when taking his medication, but was able to go out at night when there were fewer people. He said he tires easily and is unable to sit or stand for more than a few hours at a time. Plaintiff testified that he occasionally uses a cane to alleviate back pain. (*Id*., R. at 23.)

---

[1] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental functioning "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

In determining Plaintiff's residual functional capacity ("RFC"),[2] the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record, "which generally shows him to have normal gait, limited neurological deficits, and normal mental status." (*Id.*)

On April 19, 2022, agency consultative examiner Dr. Luella Bangura evaluated Plaintiff and issued the following opinion:

> ADLs: In an 8-hour work day, the patient is able to sit for 6 hours. In an 8-hour work day, the patient is able to stand for [sic] cannot stand for any significant length of time. Patient can stand for 5–10 minutes[.] Patient is unable to walk during an 8-hour work day. No lifting more than 2 lbs. No objects carrying more than 2 lbs. Patient is able to handle objects. Patient has no difficulty hearing. Patient has no difficulty speaking. Patient has no issues with sight.
>
> Difficulties: Patient has no limitations understanding directions. Patient shows difficulty with sustained concentration. Patient shows difficulty with persistence. Patient shows difficulty with memory. Patient shows difficulty working with others. Patient shows difficulty in social interactions.

(R. at 760.)

> The ALJ found this opinion unpersuasive:

> On April 14, 2022, the claimant saw Luella Bangura, MD, for a consultative examination. He reported that every joint hurts and that he cannot sit or stand for long. Dr. Bangura noted diminished and distant lung noises, 2+ pedal edema, 4/5 muscle strength, abnormal gait, and dyspnea. She opined that the claimant could not stand for any significant length of time, and that he would have difficulty with sustained concentration, memory, or working with others. (exh. 11F, 12F) I find this opinion not persuasive, as the mental limitations are not supported by any of her own findings and are also not consistent with the generally benign mental status exam findings from his providers. The limitation to no significant standing is supported by her findings, but these findings are not consistent with the record, which shows generally normal gait, motor strength, and range of motion. Further, the record shows that he reports walking as exercise.

(ALJ's Decision, R. at 25–26.)

---

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

On the other hand, the ALJ was persuaded by the opinions of state agency consultants J.V. Corcoran, MD, and Joelle J. Larsen, Ph.D., which formed the basis of Plaintiff's RFC. According to the ALJ, Dr. Corcoran's "opinion is supported by [Plaintiff's] post surgical lack of cervical radiculopathy and normal gait. It is also consistent with his self-reported activities." (*Id.*, R. at 25.) As for Dr. Larsen, the ALJ found that her opinion "is supported by the mental status notes showing mild depression and anxiety, normal mood, normal concentration, etc. It is also consistent with his reports of needing medication to avoid panic attacks in public." (*Id.*)

The ALJ concluded that Plaintiff has the RFC to perform light work[3] with the following exertional and nonexertional limitations:

- He can occasionally climb ramps or stairs; he can never climb ladders, ropes, or scaffolds;
- He can frequently balance; and he can occasionally stoop, kneel, crouch, and crawl.
- He must avoid concentrated exposure to wetness, unprotected heights, and heavy moving machinery.
- He can understand, remember, and carry out simple instructions; he can perform simple, routine, and repetitive tasks but not at a production rate pace such as assembly line or work requiring hourly production quotas.
- He can occasionally adapt to change in routine job duties.
- He can use judgment to make simple, work-related decisions.

(*Id.*, R. at 22.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. (R. at 73–74.) The VE testified that the hypothetical person could do Plaintiff's past relevant job as a cashier as actually and generally performed. (R. at 70.) The VE further testified

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

that there were other jobs available in significant numbers in the national economy for such an individual: hand presser (70,000 jobs) and packer (2,500 jobs). (R. at 78–79.) The VE said that, if the hypothetical individual were to be absent from work one and a half days every month, there would be no jobs available for such a person. (R. at 79.) In addition, this person could not be off task more than 15% of the workday. (*Id.*) Relying on the VE's testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, R. at 37.) As a result, the ALJ found Plaintiff to be not disabled.

## D.  Discussion

Plaintiff argues that the ALJ's RFC is not based on substantial evidence because he failed to properly evaluate Dr. Bangura's medical opinions under the supportability and consistency factors required by 20 C.F.R. § 404.1520c. Specifically, Plaintiff contends that the ALJ found Dr. Bangura's psychological opinion unpersuasive by characterizing his mental status exams as "generally benign," yet ignored multiple abnormal findings documenting anxiety, flat affect, tangential thought processes, and depression. In a similar vein, Plaintiff maintains that the ALJ discounted Dr. Bangura's standing and exertional limitations despite numerous records showing an antalgic gait, reduced range of motion, spinal stenosis, crepitus, and back tenderness. In short, Plaintiff insists that the ALJ thus cherry-picked the evidence on which he based his decision.

### (1) *Dr. Bangura's Professional Opinions*

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "In making these

determinations, an ALJ is subject to only the most minimal of articulation requirements. That is, the ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning. While minimal, this standard requires the ALJ to confront the evidence that does not support his conclusion and explain why it was rejected." *Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025) (citations, quotation marks, and brackets omitted). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

The Court finds no error in how the ALJ considered Dr. Bangura's opinion concerning Plaintiff's inability to stand for more than five to ten minutes. Plaintiff is quick to seize on the ALJ's finding that Dr. Bangura's opinion on this subject is supported by her examination findings, which showed leg swelling, abnormal gait, and shortness of breath. (ALJ's Decision, R. at 25–26; *see also* R. at 760.) But that alone does not carry the day for Plaintiff. Rather, Plaintiff must still show that, in finding Dr. Bangura's opinion unpersuasive, the ALJ failed to properly consider whether it was consistent with the medical record as a whole. Plaintiff has not done so.

The ALJ found Dr. Bangura's opinion that Plaintiff could not stand for long to be inconsistent with the record which shows that Plaintiff generally had normal gait, motor strength, and range of motion, and that Plaintiff reported walking for exercise. Plaintiff does not contest these findings, but argues that they're incomplete because the ALJ did not consider evidence of some examinations where his gait was antalgic and slow, and where he had limited range of

9

motion in his legs and back. (Pl.'s Br., DE 10 at 12.) In other words, he claims that the ALJ failed to consider evidence that contradicts the RFC assessment.

But that's not true as the ALJ considered all relevant evidence pertaining to Plaintiff's ability to stand. For example, the ALJ noted that in May 2020, Plaintiff told his gastric bypass surgeon that he walked daily. In July 2020, he told his endocrinologist that he had good energy. During an appointment with the urologist in September 2020, he indicated no musculoskeletal pain, and he had normal range of motion in February 2021. (ALJ's Decision, R. at 23 (citing R. at 503, 538, & 598).) At the same time, the ALJ acknowledged that imaging in the summer of 2021 showed a disc protrusion, spinal stenosis, and multiple disc bulges in Plaintiff's low back (*Id.* (citing R. at 4696, 4702, & 4721).) Plaintiff also had positive straight leg raises, reduced range of motion, and a slow, antalgic gait (*Id.* (citing 4696, 4702, 4746).) Next, the ALJ recognized that Plaintiff could not have surgery to address his back pain until he lost weight (*Id.* (citing R. at 4770).).

The ALJ also considered that, despite his ability, in 2022, to walk a block or climb a flight of stairs "and feel fine," he had tenderness in his joints from arthritis. (*Id.* (citing R. at 790 & 1875). In the summer of that year, Plaintiff reported back pain, but his gait and range of motion were normal and his tenderness improved (*Id.*, R. at 24 (citing R. at 800, 1892, 4781, & 4792). Plaintiff's gait was noted to be slow but stable in January 2023 while he received treatment for dizziness (*Id.* (citing R. at 4803).) That summer, he reported chest pains while out running errands, but his cardiac evaluation was normal. (*Id.*, (citing R. at 3942–44).)

The ALJ's consideration of this evidence demonstrates that the ALJ did not cherry-pick the record concerning Plaintiff's ability to stand but weighed the evidence as he found it. "This explicit weighing is precisely within the purview of the ALJ—and it is not [this Court's] place to

reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

Concerning Dr. Bangura's psychological opinion, this is a closer question. However, given the highly deferential standard of review and the minimal articulation requirement, Plaintiff's challenge fails for the same reasons as his challenge to the ALJ's evaluation of the medical opinion.

Dr. Bangura opined that Plaintiff shows difficulty with sustained concentration, persistence, and memory, as well as difficulty working with others and interacting socially. (R. at 760.) The ALJ found "this opinion not persuasive, as the mental limitations are not supported by any of her own findings and are also not consistent with the generally benign mental status exam findings from his providers." (ALJ's Decision, R. at 25.) Plaintiff does not contest the ALJ's finding that the opinion is not supported by Dr. Bangura's own findings during Plaintiff's examination. "Failure to raise an argument in the first instance constitutes waiver of that argument." *Lores v. SailPoint Techs., Inc.*, No. 18-CV-3910, 2019 WL 1382080, at *1 (N.D. Ill. Mar. 27, 2019) (citing *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007)). Accordingly, Plaintiff begins with a significant disadvantage. After all, in the absence of relevant objective medical evidence and supporting explanations, Dr. Bangura's opinion lacks persuasiveness. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.")

What's more, Plaintiff's argument suffers from the same shortcomings as his argument concerning Dr. Bangura's opinion about his ability to stand. Plaintiff argues that eight times his

11

health care provider observed irritability, flat mood and affect, and tangential thought processes, which according to Plaintiff contradicts the ALJ's finding that he generally presented only with "benign mental status." But Plaintiff fails to acknowledge that, even as the ALJ found the record to be inconsistent with Dr. Bangura's psychological opinion, he recognized that Plaintiff suffered from varying levels of depression (ALJ's Decision, R. at 24 (citing R. at 4733)), that he reported anxiety and difficulty going to public places (*id.* ("The claimant reported being 'borderline agoraphobic' which causes him anxiety such that he needs to curl up into a ball.")), that his thought content was circumstantial even when goal oriented (*id.*), that he was suspicious of others when out in public (*id.*, R. at 25), and that he had memory issues which he attributed to his medications (*id.*). That is to say, the ALJ did not ignore Plaintiff's psychological issues, even if not every record is listed in his decision.

"Further, [Plaintiff] has failed to meet [his] 'burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting [his] capacity to work.'" *Cynthia T. v. Saul*, No. 18 CV 50288, 2020 WL 564223, at *6 (N.D. Ill. Feb. 5, 2020) (quoting *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018)). Without identifying how the RFC should change, Plaintiff's challenge to a particular piece of evidence is in vain. *See id.* (citing *Lawrence P. v. Saul*, No. 18-CV-5763, 2019 WL 3554451, at *5 (N.D. Ill. Aug. 5, 2019) ("But Plaintiff fails to identify how these exam findings translate into any functional limitations."); *Ronald B. v. Berryhill*, No. 18-CV-4973, 2019 WL 2173776, at *5 (N.D. Ill. May 20, 2019) ("Plaintiff describes this finding as 'ominous' but does not explain its significance or how this finding should have altered the ALJ's RFC analysis."); *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 WL 2085104, at *9 (N.D. Ill. May 13, 2019) ("Merely identifying various post-DLI impressions, diagnoses, complaints, or procedures, without more,

12

does not establish a work-related functional limitation."). As a result, the Court sees no basis to remand this case.

### E. Conclusion

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 20, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court